UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASPETH MUSIC BV,<br><br>                                 Plaintiff,<br><br>                  v.<br><br>REPUBLIC RECORDS, a division of UMG RECORDINGS, INC.,<br><br>                                Defendant. | Case No.:21-4095<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Maspeth Music BV ("Maspeth" or "Plaintiff"), by and through its attorneys Reitler Kailas & Rosenblatt LLC, and for its Complaint against Republic Records, a division of UMG Recordings, Inc. ("Republic" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. On July 29, 2015, Plaintiff and Defendant executed a license agreement (thereafter amended on June 8, 2016), which granted Defendant a worldwide license (except for parts of western Europe) to commercially exploit master recordings and other content created and delivered by Matt Simons, a popular recording artist.

2. Plaintiff performed its obligations under the subject agreement until March 16, 2017, when Defendant decided not to exercise an option and allowed the term of the agreement to expire.

3. Defendant then breached the terms of the agreement by: (i) failing to renew and thereby losing a contract with the Arizona Office of Tourism worth a minimum of $34,500 per year for use of Plaintiff's songs; (ii) failing to register for and collect Neighboring Rights income due to Plaintiff under the agreement; and (iii) underpaying Plaintiff royalties due under the

agreement in excess of $500,000.  Plaintiff seeks damages for Defendant's breaches of the subject agreement and a declaration that: (i) the agreement is terminated; (ii) the rights in the master recordings that Plaintiff delivered under the agreement revert back to Plaintiff; and (iii) Plaintiff no longer has any obligations to Defendant under the agreement.

## THE PARTIES

4. Maspeth is a private limited company organized under the laws of the Netherlands. Maspeth furnishes the services of Matt Simons ("Simons"), a singer and songwriter.

5. Republic is a division of UMG.  UMG is a corporation organized under the laws of the State of Delaware with its principal place of business in California.  UMG is a global music company.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of the Netherlands and Defendant is a citizen of Delaware and/or California and not of the Netherlands.

7. This Court has subject matter jurisdiction because the amount in controversy exceeds $75,000.

8. Venue is appropriate in the Southern District of New York because the relevant contracts contain exclusive New York choice of law and jurisdiction clauses.

9. Venue is also appropriate under 28 U.S.C. § 1391 because, on information and belief, Defendant does business in New York.

**FACTUAL ALLEGATIONS**

*The Parties enter into the License Agreement*

10. On or about July 29, 2015, Plaintiff and Defendant executed a license agreement with respect to recordings by Simons, including master recordings, videos, images, and social media content owned by Plaintiff. A copy of the July 29, 2015 license agreement is annexed hereto as Exhibit A.

11. On or about June 8, 2016, Plaintiff and Defendant executed an amendment to the July 29, 2015 license agreement. A copy of the June 8, 2016 amendment is annexed hereto as Exhibit B. The July 29, 2015 license agreement and the June 8, 2016 amendment thereto will collectively be referred to as the "License Agreement".

12. The License Agreement covered the world except for Belgium, the Netherlands, Luxembourg, Germany, Switzerland, Austria, Italy, and Scandinavia,

13. The License Agreement granted Defendant an exclusive license to the recording titled "Catch & Release," with an option (exercisable by Defendant) to include all of the recordings on the album titled "Catch & Release."

14. Simons' 2015 single "Catch & Release" amassed over 200 million-plus Spotify streams. It was the number one song in seven countries, reaching platinum certifications in Germany, Belgium, Holland & Switzerland, and gold certifications in Italy, Sweden, Brazil & South Africa.

15. The License Agreement granted Defendant three separate options each for one additional album.

16. Pursuant to the License Agreement, Defendant agreed to pay recoupable advances to Plaintiff for each album it delivered to Defendant.

17. Defendant also agreed to pay Plaintiff royalties with respect to the commercial exploitation of the recordings contained on such albums.

18. The June 8, 2016 amendment revised the license available to Defendant to add, in lieu of the Catch & Release album, an option for no fewer than six new master recordings to constitute one extended play album ("EP"), and provided Defendant an additional option for a second EP to be comprised of no fewer than six additional new master recordings

19. In exchange for the expanded license and additional option, Defendant agreed to change the terms of the royalty payments and made them more favorable to Plaintiff.

20. On March 16, 2017, Defendant decided not to exercise an additional option and the term of the License Agreement expired, subject to (i) Defendant's right to continue to commercially exploit the master recordings of Catch & Release and the First Initial Period EP and (ii) Defendant's continuing obligation to provide Plaintiff royalty accountings and payment for the same.

***Defendant fails to renew a contract with the Arizona Office of Tourism worth a minimum of $34,500 per year for use of Plaintiff's songs***

21. Beginning in 2017, the Arizona Office of Tourism licensed to use two songs subject to the License Agreement, "Catch & Release" and "Lose Control", in commercials promoting the State of Arizona. The license was worth approximately $34,500 per year, of which Plaintiff was entitled to $17,500 under the License Agreement.

22. In August 2018, the marketing communications firm that solicited the license for the State of Arizona informed Plaintiff's manager that "we have reached out [to Defendant] 7 times requesting an invoice for the 2018 renewal, but have gotten no response."

23. Plaintiff repeatedly requested that Defendant renew the license but in November 2019 Plaintiff learned that Defendant failed to follow up with the marketing communications firm

and never received the renewal contract and invoice, and therefore, the license renewal and all future extensions were lost.

***Defendant fails to register for and collect Neighboring Rights income due to Plaintiff***

24. In or about June 2018, Plaintiff requested that Defendant account to Plaintiff for missing Neighboring Rights income due under the License Agreement.

25. Defendant never responded to Plaintiff's request.

26. In November 2020, Plaintiff learned that Defendant had failed to make a claim for Neighboring Rights income in various territories, including but not limited to the United States, United Kingdom, Ireland, Spain, Portugal, Greece, Hungary, Israel, Latvia, Romania, Serbia, Croatia, Czech Republic, and Brazil, and that the statutory periods to make such claims was closing or was already closed.

***Plaintiff conducts an audit and discovers that Defendant underpaid Plaintiff in excess of $500,000***

27. Following a review of Defendant's books and records, on November 27, 2019, Gelfand, Rennert & Feldman LLC ("GRF"), a business management consulting firm that specializes in music industry accounting and hired by Plaintiff provided an audit report of the royalties Defendant paid Plaintiff under the License Agreement for the period July 1, 2015 through December 31, 2018.

28. GRF demonstrated that Plaintiff was owed additional royalties in the amount of $183,764.00.

29. GRF found that the additional royalties were due to underreported digital sales, unreported third party compilations, incorrect royalty rates applied to multi-artist compilations, incorrect royalty rates applied to video-clip and broadcast income, sales made in unauthorized territories, incorrect wholesale price, streams and ringbacks, foreign licensing royalties not paid at

source, foreign broadcast income not paid at source, foreign income taxes withheld, producer deductions not reversed, excess video costs charged to royalty account, and unreported and underreported performance income, and interest.

30. On November 13, 2020, GRF provided a supplemental calculation of additional royalties Defendant underpaid Plaintiff for the "Catch & Release" single and remixes.

31. GRF further determined that Defendant failed to properly calculate Domestic Net Proceeds and foreign royalties. GRF's supplemental calculation noted, in part, as follows:

> UMG erroneously calculated amounts due for exploitations of the track "Catch & Release" under the original terms of the 2015 Agreement (e.g. 18% of wholesale), instead of under the distribution and foreign royalty terms contains in the 2016 Amendment

32. GRF's supplemental calculation showed that Plaintiff was owed additional royalties in the amount of $369,818.00. These royalties were in addition to the $183,764.00 uncovered by the audit report dated November 27, 2019.

***Defendant fails to cure its breaches of the License Agreement***

33. On January 17, 2020, Plaintiff sent Defendant a notice of breach and time to cure letter pursuant to Section 11 of the License Agreement.

34. Defendant failed to cure the breaches set forth in the letter.

35. Plaintiff has been damaged as a result of Defendant's conduct.

36. By way of an email dated February 3, 2021, Defendant agreed to toll the statute of limitations to August 19, 2021 for any claim against Defendant with respect to the audit report dated November 27, 2019.

## FIRST COUNT
### (Breach of Contract)

37. Plaintiff incorporates paragraphs 1 through 36 as if fully set forth herein.

38. The License Agreement was a valid and enforceable contract between the parties.

39. Defendant breached the License Agreement by, among other things, failing to pursue a renewal license for Plaintiff's songs with the Arizona Office of Tourism, failing to register for and collect Neighboring Rights income, and underreporting and underpaying Plaintiff royalties due thereunder.

40. As a result of Defendant's breaches, Plaintiff has been damaged in an amount to be proved at trial but no less than $500,000.

## SECOND COUNT
### (Declaratory Judgment)

41. Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

42. Plaintiff contends that as a result of Defendant's breaches, the License Agreement was thereby terminated and is no longer of any force and effect and is not legally binding upon Plaintiff.

43. Plaintiff further contends that the rights in the master recordings delivered by Plaintiff pursuant to the License Agreement, including but not limited to "Catch & Release" and "Lose Control," are therefore no longer subject to the License Agreement and the rights therein revert back to Plaintiff.

44. Upon information and belief, Defendant contends that the License Agreement was not terminated and is still in force and effect and are legally binding upon Plaintiff.

45. By reason of the foregoing, there is a justiciable controversy between Plaintiff and Defendant.

46. Because of Defendant's material breaches, as described above, Plaintiff is entitled to a declaration that the License Agreement is terminated, the rights in the master recordings that Plaintiff delivered under the License Agreement revert back to Plaintiff, and that Plaintiff no longer has any obligations to Defendant under the License Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

a) On the First Cause of Action, a judgment that Defendant breached the License Agreement and damaged Plaintiff in an amount to be determined at trial, but no less than $500,000, together with reasonable attorneys' fees, and all interest accruing thereon at the statutory rate;

b) On the Second Cause of Action, a judgment declaring that the License Agreement is terminated, the rights in the master recordings that Plaintiff delivered under the License Agreement revert back to Plaintiff, and that Plaintiff no longer has any obligations to Defendant under the License Agreement; and

c) Such other and further relief as to this Court seems just and proper.

Dated: May 7, 2021
New York, New York

**REITLER KAILAS & ROSENBLATT LLC**

By: *s/ Brian D. Caplan*
Brian D. Caplan
Brett Van Benthysen
885 Third Avenue, 20th Floor
New York, New York 10036
Tel.: (212) 209-3050
bcaplan@reitlerlaw.com
bvanbenthysen@reitlerlaw.com

*Attorneys for Maspeth Music BV*